# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

IN RE:

| | | |
|---|---|---|
| **PENNIE J. BONANNO,** | : | **Bankruptcy No. 07-70507 BM** |
| | : | |
| | : | |
| **Debtor** | : | **Chapter 7** |
| **PENNIE J. BONANNO,** | : | |
| | : | |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | **Adversary No. 08-7035 BM** |
| | : | |
| **HSBC CARD SERVICES and** | : | |
| **BANK ONE,** | : | **Complaint for Damages For** |
| | : | **Violation  Of The Discharge** |
| **Defendants** | : | **Injunction** |

Appearances: Mary K. Wheeler, Esq. for Plaintiff

## MEMORANDUM OPINION

Debtor brought this adversary action against HSBC and Bank One claiming that they violated the order granting her a bankruptcy discharge by attempting to collect a discharged debt.  An evidentiary hearing was held to determine the amount of monetary damages to which debtor was entitled after a default judgment was entered against HSBC and Bank One for failing to answer the complaint.

We conclude for reasons set forth in this memorandum opinion that debtor is not entitled to recover any damages.

## FACTS

Debtor applied to HSBC for a credit card in January of 2007.  She specifically requested a balance transfer in the amount of $12,500.00 to pay a past-due balance on another unspecified credit card.  HSBC denied the application.

Debtor filed a voluntary chapter 7 petition some four months later on May 7, 2007.  A chapter 7 trustee subsequently was appointed.

Three credit card issuers were listed on the bankruptcy schedules as having undisputed general unsecured claims in various amounts.  One of them, Chase Bank, was identified as having two such claims in different amounts. Defendant Bank One was not identified as a creditor.

The chapter 7 trustee reported after conducting the § 341 meeting that no assets of the bankruptcy estate would be available in light of debtor's exemptions for distribution to debtor's pre-petition creditors.

An order granting debtor a discharge issued on August 21, 2007.  A final decree also issued and the case was closed that same day.

In January of 2008, approximately eight months after the discharge was granted and the bankruptcy case had been closed, HSBC Card Services issued a credit card to debtor with a $4,000.00 credit limit.  When it issued the credit card, HSBC made a balance transfer in the amount of $3,900.00 to either Bank One or Chase Bank.  The record does not indicate which of them received the payment.  Debtor did not apply to HSBC for a

- 2 -

credit card after it rejected her application for one in January of 2007 and never used the credit card issued in January of 2008 to make purchases..

At some unspecified time in January of 2008, debtor asked HSBC to reduce her credit limit on the card to an amount less than $4,000.00. The amount of the reduced credit limit she requested is not indicated in the record. HSBC denied her request because it had already made the above balance transfer.

Debtor attended a three-way conference her bankruptcy counsel had on February 1, 2008, with representatives of HSBC and Chase Bank. The specifics of the conversation are not indicated in the record.

Debtor's bankruptcy counsel wrote a letter that same day which presumably was intended to memorialize the three-way conversation. Among other things, counsel demanded that the transfer balance due on the credit card issued by HSBC be "cancelled in its entirety". It did not matter to debtor whether HSBC or Chase Bank absorbed the resulting loss. In addition, counsel threatened to bring an adversary action against both HSBC and Chase Bank "for a discharge violation" if the transfer balance was not cancelled. Neither HSBC nor Chase Bank complied with counsel's demands.

Debtor began receiving telephone calls from HSBC in March of 2008 demanding payment of the past-due balance on the credit card it had issued. On March 6, 2008, debtor spoke by telephone to a representative of HSBC. Debtor insisted that she was not liable for the $3,900.00 balance transfer and demanded that HSBC stop calling her about the matter. HSBC did not stop calling debtor. According to debtor, HSBC called debtor a

- 3 -

total of eighty-six times, from April 17, 2008, through April 29, 2008.  On the advice of her bankruptcy counsel, debtor did not answer the first eighty-five calls.  She did, however, answer the eighty-sixth call and informed the person calling that her debt to Bank One had been discharged in bankruptcy.  Debtor did not receive any more calls from HSBC after this phone conversation.

Neither Bank One nor Chase Bank called debtor concerning any past-due credit card balance after she received a discharge and her bankruptcy case was closed.

On the day after the last of the eighty-six calls from HSBC, debtor brought a motion to reopen her bankruptcy case so that she could bring an adversary action against HSBC and Chase Bank for allegedly violating the discharge injunction.  The motion to reopen subsequently was granted.

Debtor thereafter commenced this adversary action against HSBC and Bank One on June 28, 2008.  The complaint stated that the action was brought pursuant to §§ 524(a)(2) and (3) of the Bankruptcy Code.  Debtor claimed that the above-described actions of HSBC and Bank One violated these provisions and sought to recover monetary damages for her alleged resulting injuries.

A default judgment subsequently was entered against HSBC and Bank One when they did not answer the complaint.  An evidentiary hearing thereafter was held to determine the amount of damages, if any, to which debtor was entitled.  Neither HSBC nor Bank One participated in the evidentiary hearing.

The matter is now ready for decision.

- 4 -

## THE ASSERTED CAUSE OF ACTION

Some preliminary observations perhaps will facilitate our analysis of debtor's quest for monetary damages.

Subsection 524(a)(2) and (3) of the Bankruptcy Code provide in part as follows:

(a) A discharge in a case under this title —...
   (2) operates as an injunction against ... an act ... to collect [or] recover .. any such debt as a personal liability of the debtor ...: and
   (3) operates as an injunction against ... an act ... to collect or recover from ... property of the debtor of the kind specified in section 541(a)(2) that is acquired after the commencement of the case, on account of any allowable community claim.

11 U.S.C. § 524.

It is immediately apparent that § 524(a)(3) does not apply here.  The provision specifically concerns certain interests of a debtor in bankruptcy and his or her spouse in community property.  Nothing in the record indicates that debtor acquired an interest in such property after the commencement of debtor's bankruptcy case.

We therefore will limit our analysis to determining whether § 542(a)(2) provides debtor with a cause of action to recover monetary damages from HSBC and Bank One for their alleged misconduct.

Before turning to this issue, it should be understood that the phrase "any such debt" found in § 524(a)(2) refers to the phrase "any debt discharged under section ... of this title" found at § 524(a)(1).  Thus, § 524(a)(2) enjoins, among other things, any act to collect or recover as a personal liability of a debtor in bankruptcy a debt that was

- 5 -

discharged in accordance with § 727(a) of the Bankruptcy Code. Debtor received such a discharge on August 21, 2008.

### DOES § 524(a)(2), STANDING ALONE, GIVE RISE TO A CAUSE OF ACTION TO REMEDY A VIOLATION OF THE DISCHARGE INJUNCTION?

Subsection 524(a)(2) gives effect to a discharge order by providing that, as a matter of law, such an order "operates as an injunction" against acts to collect or recover a discharged debt as a personal liability of a debtor in bankruptcy. This provision, in other words, "gives muscle" to a discharge order.

The Third Circuit has not addressed whether § 524(a)(2) , standing alone, provides a cause of action to remedy a violation of the discharge injunction it creates. It has noted as an aside, however, that "the weight of circuit authority is that it does not". *Joubert v. ABN Amro Mortgage Group (In re Joubert)*, 411 F.3d 452, 456 (3d Cir 2005). See, for instance, *Pertusso v. Ford Motor Credit Co.*, 233 F.3d 417, 421-23 (6th Cir. 2000); also *Walls v. Wells Fargo Bank*, 276 F.3d 502, 507-10 (9th Cir. 2002).

After analyzing the legislative history of § 524(a) and contrasting it with Congress' intention in enacting § 362(h) –– now § 362(k)(1) –– to provide a remedy for a wilful violation of the automatic stay, *Pertusso* concluded that § 524(a)(2), standing alone, does *not* give rise to a cause of action to redress a violation of the discharge injunction. 233 F.3d at 421-23. *Walls* agreed with the reasoning set forth in *Pertusso*. 276 F.3d at 507-10.

We find the reasoning in *Pertusso* persuasive and adopt it in this case. By itself, § 524(a)(2) does *not* provide a debtor with a substantive right or cause of action to

- 6 -

remedy any violations of the discharge injunction as set forth therein. If debtor in this case has a remedy against HSBC and Bank One for allegedly violating the discharge injunction, she must have some basis other than § 524(a)(2) standing alone.

## DOES § 105(a), IN CONJUNCTION WITH § 524(a)(2), PROVIDE A BASIS FOR REMEDYING A VIOLATION OF THE DISCHARGE INJUNCTION?

Our discussion does not end with the above conclusion. What about § 105(a) of the Bankruptcy Code? Does § 105(a), in conjunction with § 524(a)(2), provide a debtor in bankruptcy with a basis for remedying a violation of the discharge injunction as set forth in § 524(a)(2)?

Section 105(a) of the Bankruptcy Code states that a bankruptcy court "may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title ...". 11 U.S.C. § 105(a).

Subsection 105(a) of the Bankruptcy Code *supplements* a bankruptcy court's specifically enumerated powers by authorizing it to issue orders or judgments that are "necessary or appropriate to carry out" the provisions of the Bankruptcy Code. *Gillman v. Continental Airlines (In re Continental Airlines)*, 203 F.3d 203, 211 (3d Cir 2000).

The scope of § 105(a), however, is limited. It does not, for instance, create substantive rights which otherwise would be unavailable under the Bankruptcy Code. *U.S. v. Pepperman*, 976 F.2d 123, 131(3d Cir 1992). The equitable nature of a bankruptcy proceeding:

- 7 -

... does not give the judge a free-floating discretion to redistribute rights in accordance with his [or her] personal views of justice and fairness, however enlightened those views may be.

*U.S. v. Kaplan*, 104 F.3d 589, 597 (3d Cir 1992)(quoting *In re Chicago, Milwaukee, St. Paul & Pacific Railroad*, 791 F.2d 524, 528 7th Cir. 1986)).

As was the case with § 524(a)(2) standing alone, the Third Circuit has not addressed the question whether § 105(a) in conjunction with § 524(a)(2) provides a debtor in bankruptcy with a basis for remedying a violation of the discharge injunction as set forth at § 524(a)(2). There is reason to believe that if it were confronted with the question, however, the Third Circuit would hold that § 105(a) does *not* provide a basis for remedying a violation of § 524(a)(2).

In addition to holding that § 524(a)(2), standing alone, does not provide a basis for remedying a violation of the discharge injunction set forth therein, the Sixth Circuit concluded in *Pertusso* that § 105(a) in conjunction with § 542(a)(2) does not authorize such a cause of action. To hold, otherwise, it reasoned, would "amount to impermissible legislating by a court". *Pertusso*, 243 F.3d at 423. The Ninth Circuit agreed in *Walls* with the reasoning of *Pertusso* and arrived at the same conclusion. *Walls*, 276 F.3d at 507.

The Third Circuit in *Joubert* "expressly agreed with the reasoning of these cases" and applied it in arriving at the conclusion that § 105(a) did not provide a substantive right of action for a violation *of § 506(b)* of the Bankruptcy Code. It saw "no good reason" why the rule articulated in *Pertusso* and *Walls* should be different for actions asserted under § 506(b) rather than § 524". *Joubert*, 411 F.3d at 456.

- 8 -

This acceptance by the Third Circuit of the reasoning of the Sixth Circuit and the Ninth Circuit concerning the use of § 105(a) in a situation involving § 524 (a)(2) in our estimation is *binding* on this court; it is not *dictum*.

*Dictum* is a statement in a judicial opinion which could have been deleted without seriously undermining the analytical foundation of the court's decision because the statement was peripheral and did not receive careful consideration. *McDonald v. Master Financial, Inc (In re McDonald).*, 205 F.3d 606, 612 (3d Cir), *cert. denied*, 531 U.S. 822, 121 S.Ct. 66, 148 L.Ed.2d 31 (2000).

The acceptance in *Joubert* of the reasoning set forth in *Pertusso* and in *Walls* concerning whether § 105(a) provides a basis for remedying a violation of § 524(a)(2) was essential, not peripheral, to the conclusion of the Third Circuit that § 105(a) did not provide a basis for remedying a violation of § 506(b).  After so stating, the Third Circuit concluded *without further analysis* that § 105(a) does not provide a remedy for a violation of § 506(b).

There would have been no rationale for the holding in *Joubert* had the Third Circuit not adopted the principle that § 105(a) does not provide a basis for bringing an action for an alleged violation of § 524(a)(2).

## CIVIL CONTEMPT

Immediately after concluding in *Joubert* that § 105(a) does not "afford" a cause of action to redress a violation of § 506(b), the Third Circuit remarked that Joubert's "lone remedy is a contempt proceeding pursuant to § 105(a) in bankruptcy court". 411 F.3d at 455.  Reconciling this statement with the statement in *Joubert* that § 105(a) does not "afford" a cause of action for a violation of § 506(b) is not an easy task. We will not attempt to do so here.  The statement unquestionably is *dictum*, as defined above. In spite of this, we will take this statement concerning civil contempt at face value and consider whether the "lone remedy" in this case for an alleged violation of the discharge injunction set forth at § 524(a)(2) is a contempt proceeding brought pursuant to § 105(a).

We pointed out previously that § 524(a)(2) gives substantive effect to a bankruptcy discharge.   It provides as a matter of law that a discharge order "operates as an injunction" against an act to collect or recover a discharged debt as a personal liability of a debtor in bankruptcy.  One remedy for violating an order of court is for the court that issued the order to find the violator in contempt of court.

The Third Circuit has not explicitly addressed and decided whether § 105(a) provides a vehicle for finding one who violates the discharge injunction found at § 524 (a)(2) to be in contempt.  Other appellate courts, however, have held that an aggrieved debtor may utilize § 105(a) to bring a motion for contempt for an alleged violation of the injunction put in place by § 524(a)(2).  The Ninth Circuit, for instance, stated in *Walls* that civil contempt was an appropriate remedy for a violation of the discharge injunction.  276

- 10 -

F.3d at 506-07.  The Seventh Circuit reached the same conclusion in *Cox v. Zale Delaware, Inc.*, 239 F.3d 910, 915 (7th Cir. 2000).

Following the lead of these cases, we will consider whether HSBC or Bank One may be held in civil contempt under § 105(a) for violating the discharge injunction put in place by § 524(a)(2) by seeking to recover a discharged debt as a personal liability of debtor.

There are two types of contempt: civil and criminal.  The difference between them lies in the purpose served by a contempt citation.  Criminal contempt serves to vindicate a court's authority by punishing acts of disobedience.  Civil contempt serves to coerce compliance with a court order and to compensate the injured party for losses sustained as a result of the contemnor's disobedience. *McDonald's Corporation v. Victory Investments, Inc.*, 727 F.2d 82, 86-87 (3d Cir 1984).  Civil contempt is remedial in this respect. *Universal Athletic Sales Co. v. Salkeld*, 511 F.2d 904, 910 (3d Cir), *cert. denied*, 423 U.S. 863, 96 S.Ct. 122, 46 L.Ed.2d 92 (1975).

To establish civil contempt one must prove that: (1) a valid court order existed; (2) the alleged contemnor knew of the order; and (3) the contemnor disobeyed the order. *Harris v. City of Philadelphia*, 47 F.3d 1311, 1326 (3d Cir 1995)..

Each requirement must be proved by clear and convincing evidence. *John T. ex rel. Paul T. v. Delaware County Intermediate Unit*, 318 F.3d 545, 552 (3d Cir  2002).  This standard of proof, which defies concise definition, "lies between" the beyond-a-reasonable-doubt standard of proof and the preponderance-of-the-evidence standard of proof. *Addington v Texas*, 414 U.S. 418, 425, 99 S.Ct. 1804, 1809, 60 L.Ed.2d 323 (1979).  It has

- 11 -

been characterized as proof which elicits on the part of the finder of fact an "abiding conviction" that the truth of averred facts is "highly probable". *Colorado v New Mexico*, 467 U.S. 310, 316, 104 S.Ct. 2433, 2437, 81 L.Ed.2d 247 (1984).

The first of the requirements unquestionably is satisfied in this instance. An order granting debtor a discharge of her pre-petition debts issued on August 21, 2007. It issued in accordance with § 727(a) of the Bankruptcy Code and was — and remains — a valid and binding order. It was neither appealed nor modified or vacated. In accordance with § 524(a)(2), the order "operated as an injunction" against, among other things, any act to recover or collect as a personal liability of debtor a debt that had been discharged.

As for the second of the above requirements, has debtor proved by clear and convincing evidence that HSBC or Bank One knew about debtor's bankruptcy discharge? If they did, when did they acquire such knowledge?

The bankruptcy schedules identified only the following three creditors as having undisputed general unsecured claims in various amounts for credit card purchases: Bank of America; Chase Bank; and Sears. Chase Bank was identified as having two such claims in the respective amounts of $12,579.56 and $7,056.00. Neither HSBC nor Bank One, the named co-defendants in this adversary action, was identified as having a pre-petition claim of any type against the bankruptcy estate.

The record also indicates that neither HSBC nor Bank One was served with notice of debtor's bankruptcy petition or of any other order entered in the case. Only Bank of

- 12 -

America, Chase Bank and Sears received such notices.  In particular, they were served with notice of the order of August 21, 2007, granting debtor a discharge.

Did debtor produce evidence at trial which clearly and convincingly proves that HSBC and Bank One learned of debtor's bankruptcy discharge by some means other than service?  Evidence produced at trial proves that HSBC learned of debtor's discharge by February 1, 2008, at the latest.  That same evidence, however, does *not* clearly and convincingly prove that Bank One, the named defendant in this adversary action, ever learned of debtor's bankruptcy discharge.

According to debtor, she realized in January of 2008 after receiving the first statement for the credit card HSBC issued to debtor that HSBC had made a $3,900.00 balance transfer to Chase Bank (or was it Bank One?) without obtaining authorization from debtor to do so.  Debtor also was present on or about February 1, 2008, when her bankruptcy counsel participated in a three-way conference call with representatives of HSBC and Chase Bank.

Debtor's counsel wrote a letter on February 1, 2008 . Copies of the letter were addressed and mailed to HSBC and Chase Bank. Counsel stated in the latter that debtor had "successfully filed bankruptcy".  She also threatened to have debtor's bankruptcy case reopened and to bring an adversary action against HSBC and Chase Bank "for a discharge violation" if the balance transfer was not "cancelled in its entirety".

- 13 -

HSBC and Chase Bank undoubtedly knew of debtor's bankruptcy discharge by no later than February 1, 2008, as they had participated in the conference call and were sent copies of the letter.

What about Bank One, the other named defendant in this adversary action?  Can it be concluded with "high probability" that it ever knew about debtor's bankruptcy discharge?  Only representatives of HSBC and of Chase Bank participated in the conference call.  Only HSBC and Chase Bank were sent copies of the letter of February 1, 2008.

Given the circumstances presented, the conclusion that Bank One was aware of debtor's bankruptcy discharge follows only if Chase Bank is the successor-in-interest to Bank One and Chase Bank's knowledge of debtor's bankruptcy discharge therefore can be imputed to Bank One.  Debtor apparently relies on this proposition (or some similar proposition) in this adversary action.

If the applicable standard of proof here was the preponderance-of-the-evidence standard, we probably would be justified in concluding that Bank One knew about debtor's bankruptcy discharge because Chase Bank was the successor in interest of Bank One and knew about debtor's discharge.  The preponderance-of the-evidence standard, however, is not the applicable standard of proof.  Debtor, it was noted,  must prove by clear and convincing evidence that the second requirement of civil contempt is satisfied.

Although it may be a close call, as the finder of fact we do *not* have an "abiding conviction" based on the evidence presented at trial that it is "highly probable" that Chase Bank is the successor to Bank One.  For all that we know, Chase Bank is the successor to

- 14 -

Bank One;  debtor however, did not produce evidence to that affect.  Rather than offering

evidence to that effect, debtor has left it for this court to so assume or to find out for itself.

This is not sufficient for debtor, who has the burden of proof here, to prevail on this point.

To summarize what we have determined with respect to the second requirement

of civil contempt, debtor has proved that HSBC and Chase Bank knew of debtor's

bankruptcy discharge but has not proved that Bank One also knew.

Consider next the third requirement of civil contempt.  Has debtor proved by clear

and convincing evidence that HSBC and Bank One took action to recover or collect a pre-

petition debt which previously was discharged as a personal liability of debtor?

Consider Bank One first.  Debtor failed to prove by clear and convincing evidence

that Chase Bank was the successor to Bank One and that Chase Bank's knowledge of

debtor's discharge may be imputed to Bank One.  She also failed to prove by clear and

convincing evidence that Bank One took any action to recover or collect a discharged pre-

petition debt owed to it by debtor.

Bank One, it was noted previously, did not make any calls to debtor concerning a

discharged debt.  The only other plausible scenario we can think of is that Bank One

somehow may have "instigated" the balance transfer which occurred when HSBC issued

a credit card to debtor.  Debtor, however, produced no evidence establishing that Bank

One played any role in connection with the balance transfer.

Assume for the sake of argument that Bank One was the recipient of the balance

transfer.  The most that can be said concerning Bank One is that it did not comply with

- 15 -

debtor's demand that it return to HSBC the amount of the balance transfer.  We do not view Bank One's refusal to comply with debtor's demand as constituting *action* on the part of Bank One to collect or recover a discharged pre-petition debt.

Next consider HSBC.  It made in excess of eighty-six telephone calls to debtor, only two of which she answered, concerning the past-due balance debtor owed on the credit card it had issued in January of 2008.  Debtor did not make clear why the unanswered calls were made.  We will assume for the sake of argument that the objective of the calls was to demand payment of the past-due balance.

Even with this assumption in place, we do *not* view these calls as violating the discharge injunction put in place by § 524(a)(2).  Specifically, we do view these calls by HSBC as constituting action on its part to collect *a discharged pre-petition debt* as a personal liability of debtor.  The debt owed to it that  HSBC sought to recover arose post-petition, not pre-petition, and thus was not subject to the discharge order of August 21, 2007.

With certain exceptions not relevant here, a bankruptcy discharge granted in accordance with § 727(a) of the Bankruptcy Code applies to all debts that arose *before* the order for relief in the bankruptcy case. 11 U.S.C. § 727(b).  The commencement of a bankruptcy case under any chapter of the Bankruptcy Code constitutes an order for relief. 11 U.S.C. § 301(b).  Debtor commenced her chapter 7 bankruptcy case on May 7, 2007. It follows from these provisions that the discharge order applied only to debts owed by debtor which arose prior to May 7, 2007.

- 16 -

When did the debt owed to HSBC by debtor arise?  If it arose *after* the petition date, the debt is not covered by the discharge injunction in this case.

A debt is defined for bankruptcy purposes as a liability on a claim. 11 U.S.C. § 101 (12).  A claim is a right to payment, whether or not such right is reduced to judgment, liquidated or unl unmatured, disputed or undisputed, legal or equitable, secured or unsecured. 11 U.S.C. § 101(5)(a).

The terms "debt" and "claim" are co-extensive. *In re First Jersey Securities*, 180 F.3d 504, 510 (3d Cir 1999).  When a creditor has a claim against a debtor, the debtor correspondingly owes a debt to the creditor. *Id.*, 180 F.3d at 510.  They are but "two windows on the same room". *Sigmon v. Royal Cake Co.(In re Cybermech, Inc.)*, 13 F.3d 818, 822 (4th Cir. 1994).

The Bankruptcy Code does not specify when a right to payment, and thus a debt, arises for bankruptcy purposes.  It is, however, the law in the Third Circuit that a claim, and hence a debt, arises *when the cause of action underlying it accrues. Avellino & Biennes v. M. Frenville Co.*, 744 F.2d 332, 335-36 (3d Cir 1984).

The amount due on the credit card balance consisted  of the balance transfer HSBC made in January of 2008.  We need not determine, precisely when HSBC would have a cause of action against debtor for not paying the balance due on the credit card it issued to debtor.

We will assume for analytical purposes that the balance transfer made by HSBC satisfied, at least in part, a pre-petition debt owed by debtor to some creditor.  Debtor.

- 17 -

evidently would have us conclude from this that the debt arising from the balance transfer also qualified as a discharged debt.  Debtor offered no authority for the proposition that the debt owed to HSBC as a result of the post-petition balance transfer must also be considered a pre-petition debt.  It suffices to point out that such a cause of action by HSBC would accrue only *after* the post-petition balance transfer occurred and *after* debtor refused to pay the past-due credit card balance.[1]

It follows from the foregoing that debtor cannot prevail on a claim that HSBC and Bank One should be held in civil contempt for violating the injunction arising out of the order granting debtor a discharge.  Debtor consequently is not entitled to recover any damages from HSBC or Bank One.

An appropriate order will issue.

_____
**BERNARD MARKOVITZ**
U.S. Bankruptcy Judge

Date: _3-24-09_____

---

[1] We take no position concerning whether HSBC would prevail on such a cause of action. The issue is not before the court.

- 18 -

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

IN RE:

| | | |
|---|---|---|
| **PENNIE J. BONANNO,** | : | **Bankruptcy No. 07-70507 BM** |
| | : | |
| | : | |
| **Debtor** | : | **Chapter 7** |
| **PENNIE J. BONANNO,** | : | |
| | : | |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | **Adversary No. 08-7035 BM** |
| | : | |
| **HSBC CARD SERVICES and** | : | |
| **BANK ONE,** | : | **Complaint for Damages For** |
| | : | **Violation  Of The Discharge** |
| **Defendants** | : | **Injunction** |

### ORDER OF COURT

**AND NOW**, this <u>**24th**</u> day of <u>**March**</u>, 2009, for reasons set forth in the preceding memorandum opinion, it hereby is **ORDERED**, **ADJUDGED** and **DECREED** that the amount of monetary damages to which debtor is entitled in this case is $ 0.00.

It is **SO ORDERED**.

_____  3-24-09
**BERNARD MARKOVITZ**
U.S. Bankruptcy Judge

cm:    Pennie J. Bonanno
       Mary K. Wheeler, Esquire
       Lisa M. Swope, Esquire
       Office of United States Trustee

**FILED**

MAR 2 4 2009

CLERK, U.S. BANKRUPTCY COURT
WEST. DIST. OF PENNSYLVANIA